**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

FILED - CLERK
U.S. DISTRICT COURT

2003 MAR 21  PM 1: 39

TX EASTERN - LUFKIN

BY_____

| | |
|---|---|
| BURNS, MORRIS & STEWART LIMITED PARTNERSHIP, 1124 Bennett Clark Road Nacogdoches, Texas 75963. <br><br> Plaintiff, <br><br> vs. <br><br> THE STANLEY WORKS, 1000 Stanley Drive New Britain, Connecticut 06053. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> Civil Action No. 9:03cv70 <br><br> Judge **Judge Hannah** |

### COMPLAINT AND JURY DEMAND

Plaintiff, Burns, Morris & Stewart Limited Partnership ("BMS"), by and through its attorneys, hereby complains and alleges against Defendant, Stanley Works ("Stanley") as follows:

### PARTIES

1.  Plaintiff BMS is a Limited Partnership organized under the laws of Texas and having its principal place of business at 1124 Bennett Clark Road, Nacogdoches, Texas 75963.

2.  Upon information and belief, Defendant Stanley is a Connecticut Corporation having its principal place of business at 1000 Stanley Drive, New Britain, Connecticut 06053.

## JURISDICTION & VENUE

3. This is a claim for patent infringement arising under the patent laws of the United States as set forth in Title 35 of the United States Code. This Court has jurisdiction over the subject matter of the present claims pursuant to 28 U.S.C. §§1331 and 1338(a).

4. Venue against Defendant Stanley is proper in this District pursuant to 28 U.S.C. §1400(b), because, upon information and belief, Defendant either resides, or has committed acts of infringement and has a regular and established place of business in this district.

5. Defendant Stanley is subject to personal jurisdiction in this judicial district because it is doing business and/or has caused injury to Plaintiff in this district, and has committed one or more acts of patent infringement in this district.

## THE PATENTS AT ISSUE

6. Plaintiff is the assignee and owner of United States Patent No. 5,661,943 ("the '943 patent") entitled "FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS", United States Patent No. 5,873,209 ("the '209 patent") entitled "FRAME WITH INTEGRAL ENVIRONMMENT RESISTANT MEMBERS", United States Patent No. 5,950,391 ("the '391 patent") entitled "FRAME WITH INTEGRAL ENVIRONMENT", United States Patent No. 6,122,882 ("the '882 patent") entitled "COMPONENT WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS" (collectively "the BMS patents").

7. The '943 patent was filed on March 8, 1996, and was duly and properly issued on September 2, 1997. The '943 patent is hereby incorporated by reference herein, and a copy is appended hereto as Exhibit A.

8. The '209 patent was filed on April 22, 1997, and was duly and properly issued on February 23, 1999. The '209 patent is hereby incorporated by reference herein, and a copy is appended hereto as Exhibit B.

9. The '391 patent was filed on August 6, 1998, and was duly and properly issued on September 14, 1999. The '391 patent is hereby incorporated by reference herein, and a copy is appended hereto as Exhibit C.

10. The '882 patent was filed on June 29, 1999, and was duly and properly issued on September 26, 2000. The '882 patent is hereby incorporated by reference herein, and a copy is appended hereto as Exhibit D.

11. Defendant Stanley became aware of Plaintiff's patents and patented technology as a result of communications between Plaintiff and Defendant at least as early as February 14, 2001.

12. On February 14, 2001, three of Defendant Stanley's employees, Klaus Meyer, Jeff Tartamella and Rick Kon, executed Confidential Disclosure Agreements with Plaintiff. A copy of the Confidential Disclosure Agreement executed by Klaus Meyer is appended as Exhibit E. A copy of the Confidential Disclosure Agreement executed by Jeff Tartamella is appended as Exhibit F. A copy of the Confidential Disclosure Agreement executed by Rick Kon is appended as Exhibit G.

## CLAIM

13. Plaintiff adopts, alleges and incorporates by reference, as if fully set forth herein, Paragraphs 1 through 10 of this Complaint.

14. Upon information and belief, Defendant manufactures and sells a continuous head and sill system ("Head and Sill System") having a moisture resistant lower portion, or portions.

15. On numerous occasions over the last several months, Plaintiff, directly and through counsel, notified Defendant of the BMS patents and the concern over Defendant's manufacture, sale, and /or offer to sell the Head and Sill System.

16. By making, selling and/or offering to sell said Head and Sill System, Defendant is infringing, and contributing to the infringement and/or inducing the infringement of the BMS patents.

17. Defendant's acts of infringement have caused, are causing, and will continue to cause irreparable injury to Plaintiff.

18. Defendant's acts of infringement have been willful and deliberate.

**WHEREFORE**, Plaintiff respectfully demands judgement from this Court against Defendant, its successors, subsidiaries, affiliates, officers, agents, servants, employees, and all persons in active concert or participation as follows:

(A) An order and/or declaration that Defendant has and is continuing to infringe one or more claims of the BMS patents;

(B) An injunction, permanently enjoining Defendant, its successors, subsidiaries, affiliates, officers, agents, servants, employees and all persons in active concert or

participation with it, each and all of them, from infringing, inducing the infringement, and/or contributing to the infringement of the BMS patents;

(C) An award of damages to Plaintiff, sufficient to adequately compensate Plaintiff for all of Defendant's acts of infringement;

(D) A finding that said infringement by Defendant is willful and deliberate, and a corresponding award of increased damages to Plaintiff as provided therefore under 35 U.S.C. §284;

(E) An award of prejudgment interest to Plaintiff on all sums recovered from Defendant;

(F) A finding that this case is exceptional under 35 U.S.C. §285, and that Plaintiff is thereby entitled to its costs and attorney's fees incurred in bringing this action against Defendant;

(G) An order directing Defendant to file with the Court and serve upon Plaintiff within thirty (30) days after the issuance by this Court of any injunction, a report, in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with said injunction; and

(H) An award to Plaintiff of such other and future relief as may be provided by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

Dated: March 21, 2003

CLAUDE E. WELCH, Texas Bar No. 21120500
115 W. SHEPHERD AVE.
LUFKIN, TEXAS 75901
(936) 639-3311
(936) 639-3049 FAX
Local Counsel to Plaintiff, BURNS, MORRIS &
STEWART LIMITED PARTNERSHIP


JEFFREY S. STANDLEY, Ohio Bar No. 0047248
JAMES L. KWAK, Ohio Bar No. 0066485
F. MICHAEL SPEED, JR., Ohio Bar No. 0067541
MICHAEL STONEBROOK, Ohio Bar No. 0075363
STANDLEY & GILCREST LLP
495 METRO PLACE SOUTH, SUITE 210
DUBLIN, OHIO 43017
(614) 792-5555
(614) 792-5536 FAX
Trial Attorney for Plaintiff, BURNS, MORRIS &
STEWART LIMITED PARTNERSHIP


STEVE ROPER
ZELESKEY, CORNELIUS, HALLMARK, ROPER &
        HICKS, L.L.P.
1616 South Chestnut Street
P.O. Drawer 1728
Lufkin, TX 75902-1728

6

Case 9:03-cv-00070-JH   Document 1   Filed 00/00/00   Page 7 of 26   Page ID #: 7



## United States Patent [19]

### Hagel

[11] Patent Number: 5,661,943

[45] Date of Patent: Sep. 2, 1997

US005661943A

[54] **FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS**

[75] Inventor: **Richard C. Hagel**, Nacogdoches, Tex.

[73] Assignee: **Burns, Morris & Stewart Limited Partnership**, Nacogdoches, Tex.

[21] Appl. No.: **612,757**

[22] Filed: **Mar. 8, 1996**

[51] Int. Cl.$^6$ ..................................................... **E04C 2/38**

[52] U.S. Cl. .................... **52/656.4**; 52/204.66; 52/204.7; 52/170; 52/515

[58] Field of Search ................................... 52/715, 737.3, 52/730.7, 204.1, 213, 737.5, 736.4, 170, 515–517, 656.2, 656.7, 656.4, 204.62, 204.66, 204.69, 204.7

[56]                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,281,864 | 5/1942 | Toothacre | 20/11 |
| 2,292,301 | 8/1942 | Smith | 20/11 |
| 2,292,806 | 8/1942 | Toothacre | 20/11 |
| 2,781,559 | 2/1957 | Savoie | 20/11 |
| 2,854,843 | 10/1958 | Lamb | 72/128 |
| 2,898,642 | 8/1959 | Etling | 20/11 |
| 3,690,082 | 9/1972 | Byland | 52/656.4 X |
| 3,769,773 | 11/1973 | Mochizuki | 52/656.4 |
| 3,808,759 | 5/1974 | Carmichael | 52/656.4 X |
| 3,812,621 | 5/1974 | Ragland | 49/505 |
| 5,074,092 | 12/1991 | Norlander | 52/455 |
| 5,365,708 | 11/1994 | Winston | 52/212 |
| 5,437,130 | 8/1995 | Raynak | 52/656.2 X |
| 5,546,715 | 8/1996 | Edstrom | 52/730.7 X |
| 5,553,438 | 9/1996 | Hsu | 52/736.4 |

OTHER PUBLICATIONS

Article published in *Wood Digest* entitled, "Extrusion Process May Shape Component Manufacturing's Future", four pages.

*Primary Examiner*—Carl D. Friedman
*Assistant Examiner*—Yvonne Horton-Richardson
*Attorney, Agent, or Firm*—Standley & Gilcrest

[57]                **ABSTRACT**

A frame for improved moisture, decay and insect resistance. The frame preferably includes a plurality of members of which certain members are comprised of materials resistant to moisture, decay and insects. The resistant members are integrally connected to provide a single, low cost structure.

**5 Claims, 1 Drawing Sheet**





EXHIBIT

A



*Fig. 1*

*Fig. 2*

**U.S. Patent**          Sep. 2, 1997          5,661,943



*Fig. 1*

*Fig. 2*

5,661,943

1

## FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS

### FIELD OF THE INVENTION

The invention relates to frames such as door or window frames, and particularly to frames having integrally connected portions resistive to moisture, decay and insects.

### BACKGROUND OF THE INVENTION

The construction industry is under constant pressure to provide quality products at low cost. Door frames are no exception.

During construction of a home or the like, an opening is left in the wall in which the door or window is installed. In some cases, a custom door frame is built in the door opening. After the door frame is built, the door is hung within the door frame. While this provides builders complete control, such a construction technique can be time consuming and costly. Measurements and construction must be very precise to accurately place the door frame into the opening and account for small variations in the door.

Another method of hanging frames is with the use of pre-hung doors or windows. In this case, a completed frame and door is provided to the builder. An example of an adjustable door frame assembly is found in U.S. Pat. No. 3,812,621. Thus, the frame and door are pre-matched for tighter fitting door or windows.

One known method of providing pre-built frames at a low cost is with the use of scrap lumber. Scrap lumber is produced when a defect, such as a knot hole or imperfect edge, is removed from a larger or parent piece of lumber. This allows the parent lumber to be sold as a higher quality piece than it otherwise would. The resulting scrap piece containing the defect is typically much smaller than its parent piece. The scrap lumber is then processed or recycled by removing the defect to produce a relatively small, but still good quality piece of wood fiber. These small pieces are then finger jointed at their ends and joined end to end to produce a single long piece, which is used to produce the door frame.

Norlander in U.S. Pat. No. 5,074,092 describes a technique for overcoming certain deficiencies with inexpensive lumber having a variety of knots and other defects. Quality veneers are assembled with cores of short end-to-end staves of solid lumber to produce a laminated wood door product having stability and good appearance.

While these techniques have produced low cost door and window frames, the use of wood in them causes the frames to be susceptible to moisture and insects. In the past, once water or termite damage has caused a portion of the frame to decay, that portion of the frame was replaced. Repair was performed while the frame was in place. A craftsman would cut out the decayed portion and replace it with another wood or plastic section. Thus, while costs were initially low, the end result was often expensive.

### SUMMARY OF THE INVENTION

The present invention is a frame having durable, yet cost effective characteristics not found in the prior art. In the preferred embodiment, a door frame is comprised of a top section and two side sections. Each side section includes a lower portion being both durable and moisture, decay and insect resistant. The top section and upper portions are comprised of smaller wood pieces. The wood pieces and durable portions are connected end to end with a glued finger joint to assemble the door frame. Hinge recesses and strike plate mountings are provided.

2

### BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description of the preferred embodiment is considered in conjunction with the following drawings, in which:

FIG. 1 is an isometric view of a door frame system according to the preferred embodiment of the present invention; and

FIG. 2 is an side view of a side portion of the door frame of FIG. 1.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

Referring now to FIG. 1, there is illustrated a door frame F embodying the principles of the present invention. The door frame F is comprised of spaced vertical side jambs 1 and 2 connected together at the top by a horizontal top jamb 3. One side jamb 1 includes a suitable number of hinge recesses 4 formed in it to mount hinges on while the opposite side jamb 2 is used to mount a strike plate. Each of the jambs 1, 2 and 3 have an L-shaped shoulder 5 on an interior surface for capturing a door.

Each of the side jambs 1 and 2 are formed from an upper wood portion 6 and a lower durable portion 7. The wood portions 6 are formed from a number of smaller wood pieces 6a–6g. Side jamb 1 includes wood pieces 6a, 6b and 6c and side jamb 2 includes wood pieces 6d, 6e 6f and 6g. The wood pieces 6a–6g are formed from what originally were pieces of scrap lumber which have been processed or recycled to remove imperfections, such as knots, bark or uneven surfaces. As shown, the wood pieces 6a–6g are not necessarily of even length and the side jambs 1 and 2 may comparatively include an unequal number or wood pieces. However, the number of pieces 6a–6g is not so many as to jeopardize overall strength of the frame F.

Top jamb 3 is formed from a number of smaller wood pieces 3a and 3b in a manner similar to wood portion 6.

The durable portion 7 is preferably an extruded wood-based product, such as Strandex®, ERT®, TREX® or the like, which can be shaped using conventional wood processing techniques, painted or stained. The durable portion 7 has the characteristics of being moisture, decay and insect resistant. Side jamb 1 includes a durable piece 7a and side jamb 2 includes a durable piece 7b. The placement of the durable portion 7 on the lower portion of the frame prevents all but the most severe weather and insect damage suffered by prior art door frames. The durable pieces 7a and 7b may be proportioned based on the expected exposure to adverse conditions such as rain, snow or insects. Thus, the assembly of the wood portion 6 and the durable portion 7 provides a durable, yet cost effective door frame. It is noted that other materials, such as plastic or similar extrusions, can be used for the durable pieces to achieve the principles of the present invention.

In the assembly of the side jambs 1 and 2, the durable pieces 7 are connected end to end by a glued finger joint 10 to the wood portions 6. One of the joints 10 is illustrated more clearly in FIG. 2. Referring now to FIG. 2, wood piece 6g includes a number of fingers 11 protruding from an end face and durable piece 7b has a corresponding number of mated fingers 12 protruding from an adjacent end face. It should be understood that other wood joints are contemplated, such as edge gluing or their equivalents.

Referring back to FIG. 1, it is there illustrated that the wood pieces comprising the wood portion 6 are also finger

5,661,943

**3**

jointed so that the assembly of the wood portion 6 with the durable portion 7 forms a complete side jamb 1 or 2.

In the assembly of the door frame F, the top jamb 3 is connected to the side jambs 1 and 2 with a corner joint 13. After assembly of the door frame F, the door frame F is ready for placement into a door opening of a wall. Thereafter, hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door. In use, the moisture, decay and insect resistant features of the door frame F prevent the problems associated with the prior art door frames.

It is noted that the use of the present invention is not limited to door frames. The invention may be used in window frames, garage door frames and other applications where wood is heavily subjected to weather or insects, but a cost effective solution is desired. Further, it is noted that solid stock lumber can be used in place of pieces 6a–6g without detracting from the principles of the present invention. It is also noted that further weather and insect protection can be afforded by chemically treating the wood pieces, although at a somewhat higher cost.

In describing the invention, reference has been made to a preferred embodiment and illustrative advantages of the invention. However, those skilled in the art and familiar with

**4**

the disclosure of the present invention may recognize additions, deletions, modifications, substitutions, equivalents and other changes may be made without departing from the spirit of the invention.

What is claimed is:

1. A frame, comprising:

a top jam;

two side jambs having upper and lower portions that are integrally formed, said upper portion being made of wood, said lower portion being a durable moisture, decay, and insect resistant made from a wood particulate that is mixed with resins.

2. The frame of claim 1, wherein said top jamb and said side jambs include a shoulder on an interior surface.

3. The frame of claim 1, wherein one of said side jambs includes means for receiving a hinge.

4. The frame of claim 1, wherein one of said side jambs includes means for receiving a strike plate.

5. The frame of claim 1, wherein at least two pieces of wood are joined together to form a section, said section selected from said top jamb and said upper portion of said side jamb.

* * * * *

US005873209A

# United States Patent [19]

## Hagel

[11] **Patent Number:** 5,873,209

[45] **Date of Patent:** *Feb. 23, 1999

[54] **FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS**

[75] Inventor: **Richard C. Hagel**, Nacogdoches, Tex.

[73] Assignee: **Burns, Morris & Stewart Limited Partnership**, Nacogdoches, Tex.

[ * ] Notice: The term of this patent shall not extend beyond the expiration date of Pat. No. 5,661,943.

[21] Appl. No.: **837,776**

[22] Filed: **Apr. 22, 1997**

### Related U.S. Application Data

[63] Continuation of Ser. No. 612,757, Mar. 8, 1996, Pat. No. 5,661,943.

[51] Int. Cl.$^6$ ................................................. E04C 2/38
[52] U.S. Cl. ................ 52/656.4; 52/170; 52/656.2; 52/204.66; 52/204.7; 52/515
[58] Field of Search ...................... 52/656.2, 656.4, 52/656.7, 204.62, 204.66, 204.7, 170, 515

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,281,864 | 5/1942 | Toothacre . |
| 2,292,301 | 8/1942 | Smith . |
| 2,292,806 | 8/1942 | Toothacre . |
| 2,781,559 | 2/1957 | Savoie . |
| 2,854,843 | 10/1958 | Lamb . |
| 2,898,642 | 8/1959 | Etling . |
| 3,690,082 | 9/1972 | Byland . |
| 3,769,773 | 11/1973 | Mochizuki . |
| 3,808,759 | 5/1974 | Carmichael . |
| 3,812,621 | 5/1974 | Ragland . |
| 5,074,092 | 12/1991 | Norlander . |
| 5,365,708 | 11/1994 | Winston . |
| 5,437,130 | 8/1995 | Raynak . |
| 5,546,715 | 8/1996 | Edstrom . |
| 5,553,438 | 9/1996 | Hsu . |

#### OTHER PUBLICATIONS

Article published in Wood Digest entitled. "Extrusion Process May Shape Component Manufacturing Future", four pages.

*Primary Examiner*—Christopher Kent
*Assistant Examiner*—Yvonne Horton-Richardson
*Attorney, Agent, or Firm*—Standley & Gilcrest

[57] **ABSTRACT**

A construction component for improved moisture, decay and insect resistance. The component preferably includes a plurality of members of which certain portions are comprised of materials resistant to moisture, decay and insects. The resistant member(s) are integrally connected to wood portion(s) to provide a single, low cost structure.

**20 Claims, 1 Drawing Sheet**





**U.S. Patent**         Feb. 23, 1999          5,873,209



*Fig. 1*

*Fig. 2*

5,873,209

**1**

## FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS

This application is a continuation of U.S. patent application Ser. No. 08/612,757 filed Mar. 8, 1996, now U.S. Pat. No. 5,661,943 entitled FRAME WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS by Richard C. Hagel.

### FIELD OF THE INVENTION

The invention relates to frames such as door or window frames, or other components such as porch posts, brickmolds, and casings, and particularly to components having integrally connected portions resistive to moisture, decay and insects.

### BACKGROUND OF THE INVENTION

The construction industry is under constant pressure to provide quality products at low cost. Door frames and other construction components are no exception.

During construction of a home or the like, an opening is left in the wall in which the door or window is installed. In some cases, a custom door frame is built in the door opening. After the door frame is built, the door is hung within the door frame. While this provides builders complete control, such a construction technique can be time consuming and costly. Measurements and construction must be very precise to accurately place the door frame into the opening and account for small variations in the door.

Another method of hanging frames is with the use of pre-hung doors or windows. In this case, a completed frame and door is provided to the builder. An example of an adjustable door frame assembly is found in U.S. Pat. No. 3,812,621. Thus, the frame and door are pre-matched for tighter fitting door or windows.

One known method of providing pre-built frames at a low cost is with the use of scrap lumber. Scrap lumber is produced when a defect, such as a knot hole or imperfect edge, is removed from a larger or parent piece of lumber. This allows the parent lumber to be sold as a higher quality piece than it otherwise would. The resulting scrap piece containing the defect is typically much smaller than its parent piece. The scrap lumber is then processed or recycled by removing the defect to produce a relatively small, but still good quality piece of wood fiber. These small pieces are then finger jointed at their ends and joined end to end to produce a single long piece, which is used to produce the door frame.

Norlander in U.S. Pat. No. 5,074,092 describes a technique for overcoming certain deficiencies with inexpensive lumber having a variety of knots and other defects. Quality veneers are assembled with cores of short end-to-end staves of solid lumber to produce a laminated wood door product having stability and good appearance.

While these techniques have produced low cost door and window frames, the use of wood in them causes the frames to be susceptible to moisture and insects. In the past, once water or termite damage has caused a portion of the frame to decay, that portion of the frame was replaced. Repair was performed while the frame was in place. A craftsman would cut out the decayed portion and replace it with another wood or plastic section. Thus, while costs were initially low, the end result was often expensive.

### SUMMARY OF THE INVENTION

The present invention is a component having durable, yet cost effective characteristics not found in the prior art. In the

**2**

preferred embodiment, a construction component is comprised of a first section and second section. The second section is comprised of a material that is durable and moisture, decay and insect resistant. The first section is comprised of wood. The wood and durable portions are connected end to end with a glued finger joint or other mechanical connection to assemble the component. Associated hardware may also be added.

### BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description of the preferred embodiment is considered in conjunction with the following drawings, in which:

FIG. 1 is an isometric view of a door frame system according to a preferred embodiment of the present invention; and

FIG. 2 is a side view of a side portion of the door frame of FIG. 1.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

Referring now to FIG. 1, there is illustrated a door frame F embodying the principles of the present invention. The door frame F is comprised of spaced vertical side jambs 1 and 2 connected together at the top by a horizontal top jamb 3. One side jamb 1 includes a suitable number of hinge recesses 4 formed in it to mount hinges on while the opposite side jamb 2 is used to mount a strike plate. Each of the jambs 1, 2 and 3 have an L-shaped shoulder 5 on an interior surface for capturing a door.

Each of the side jambs 1 and 2 are formed from an upper wood portion 6 and a lower durable portion 7. The wood portions 6 are formed from a number of smaller wood pieces 6a–6g. Side jamb 1 includes wood pieces 6a, 6b and 6c and side jamb 2 includes wood pieces 6d, 6e, 6f and 6g. The wood pieces 6a–6g are formed from what originally were pieces of scrap lumber which have been processed or recycled to remove imperfections, such as knots, bark or uneven surfaces. As shown, the wood pieces 6a–6g are not necessarily of even length and the side jambs 1 and 2 may comparatively include an unequal number or wood pieces. However, the number of pieces 6a–6g is not so many as to jeopardize overall strength of the frame F.

Top jamb 3 is formed from a number of smaller wood pieces 3a and 3b in a manner similar to wood portion 6.

The durable portion 7 may be an extruded wood-based product, such as STRANDEX®, ERT®, TREX® or the like, which can be shaped using conventional wood processing techniques, painted or stained. The durable portion may also be made of plastic, vinyl, metal and combinations of any of these materials. The durable portion 7 has the characteristics of being moisture, decay and insect resistant. Side jamb 1 includes a durable piece 7a and side jamb 2 includes a durable piece 7b. The placement of the durable portion 7 on the lower portion of the frame prevents all but the most severe weather and insect damage suffered by prior art door frames. The durable pieces 7a and 7b may be proportioned based on the expected exposure to adverse conditions such as rain, snow or insects. Thus, the assembly of the wood portion 6 and the durable portion 7 provides a durable, yet cost effective door frame. It is noted that other materials, such as plastic or similar extrusions, can be used for the durable pieces to achieve the principles of the present invention.

5,873,209

**3**

In the assembly of the side jambs 1 and 2, the durable pieces 7 are preferably connected end to end by a glued finger joint 10 to the wood portions 6. One of the joints 10 is illustrated more clearly in FIG. 2. Referring now to FIG. 2, wood piece 6g includes a number of fingers 11 protruding from an end face and durable piece 7b has a corresponding number of mated fingers 12 protruding from an adjacent end face. It should be understood that other wood joints are contemplated, such as edge gluing or their equivalents.

Referring back to FIG. 1, it is there illustrated that the wood pieces comprising the wood portion 6 are also finger jointed so that the assembly of the wood portion 6 with the durable portion 7 forms a complete side jamb 1 or 2.

In the assembly of the door frame F, the top jamb 3 is connected to the side jambs 1 and 2 with a corner joint 13. After assembly of the door frame F, the door frame F is ready for placement into a door opening of a wall. Thereafter, hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door. In use, the moisture, decay and insect resistant features of the door frame F prevent the problems associated with the prior art door frames.

It is noted that the use of the present invention is not limited to door frames. The invention may be used in window frames, garage door frames, porch posts, casings, brickmolds and other applications where wood is heavily subjected to weather or insects, but a cost effective solution is desired. Further, it is noted that solid stock lumber can be used in place of pieces 6a–6g without detracting from the principles of the present invention. It is also noted that further weather and insect protection can be afforded by chemically treating the wood pieces, although at a somewhat higher cost.

In describing the invention, reference has been made to a preferred embodiment and illustrative advantages of the invention. However, those skilled in the art and familiar with the disclosure of the present invention may recognize additions, deletions, modifications, substitutions, equivalents and other changes may be made without departing from the spirit of the invention.

What is claimed is:

1. A frame, comprising:

a top jam;

two side jambs having upper and lower portions that are integrally formed, said upper portion being made of wood, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

2. The frame of claim 1, wherein said second material is plastic.

**4**

3. The frame of claim 1, wherein said second material is vinyl.

4. A construction component comprising:

a first portion and a second portion that are integrally joined, said first portion being made of wood, said second portion being a durable material made from a second material selected from the group consisting of materials other than wood, materials other than wood in formulation with wood particles, and wood adapted to be moisture, decay, and insect resistant.

5. The construction component of claim 4, wherein the construction component is a brickmold.

6. The construction component of claim 4, wherein the construction component is a porch post.

7. The construction component of claim 4, wherein the construction component is a casing.

8. The construction component of claim 4, where in the second portion is entirely plastic.

9. The construction component of claim 4, where in the second portion is entirely vinyl.

10. The construction component of claim 4, where in the second portion is entirely metal.

11. The construction component of claim 4, where in the second portion is entirely plastic based composition.

12. The construction component of claim 4, where in the second portion is entirely vinyl based composition.

13. The construction component of claim 4, wherein the construction component is a frame for a door.

14. The construction component of claim 4, wherein the construction component is a door.

15. A window frame comprising:

a top frame jamb;

two side frame jambs;

said two side frame jambs each having upper and lower portions that are integrally formed, said upper portion being made of a first material, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

16. The frame of claim 15, wherein said second material is plastic.

17. The frame of claim 15, wherein said second material is vinyl.

18. The frame of claim 15, wherein said second material is metal.

19. The window frame of claim 15, wherein said window frame is a sidelight frame.

20. The window frame of claim 15, wherein said first material is a natural wood.

*   *   *   *   *



US005950391A

# United States Patent [19]

**Hagel**

[11] **Patent Number:** **5,950,391**

[45] **Date of Patent:** **Sep. 14, 1999**

[54] **FRAME WITH INTEGRAL ENVIRONMENT**

[75] Inventor: **Richard C. Hagel**, Nacogdoches, Tex.

[73] Assignee: **Burns, Morris & Stewart Limited Partnership**, Nacogdoches, Tex.

[21] Appl. No.: **09/130,160**

[22] Filed: **Aug. 6, 1998**

**Related U.S. Application Data**

[63] Continuation of application No. 08/837,776, Apr. 22, 1997, Pat. No. 5,873,209, which is a continuation of application No. 08/612,757, Mar. 8, 1996, Pat. No. 5,661,943.

[51] Int. Cl.$^6$ .................................................. **E04C 2/38**

[52] U.S. Cl. .................. **52/656.4**; 52/204.66; 52/204.7; 52/170; 52/212; 52/515; 52/656.5

[58] Field of Search .............................. 52/656.2, 656.4, 52/656.7, 204.62, 204.66, 204.7, 170, 515, 212, 656.5

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 3,812,621 | 5/1974 | Ragland . | |
| 5,074,092 | 12/1991 | Nordander . | |
| 5,661,943 | 9/1997 | Hagel | 52/656.4 |
| 5,873,209 | 2/1999 | Hagel | 52/656.4 |

*Primary Examiner*—Christopher T. Kent
*Assistant Examiner*—Yvonne Horton-Richardson
*Attorney, Agent, or Firm*—Standley & Gilcrest LLP

[57] **ABSTRACT**

A construction component for improved moisture, decay and insect resistance. The component preferably includes a plurality of members of which certain portions are comprised of materials resistant to moisture, decay and insects. The resistant member(s) are integrally connected to wood portion(s) to provide a single, low cost structure.

**3 Claims, 1 Drawing Sheet**





EXHIBIT

C



*Fig. I*

*Fig. 2*

5,950,391

**1**

## FRAME WITH INTEGRAL ENVIRONMENT

This application is a continuation of U.S. patent application Ser. No. 08/837,776 filed Apr. 22, 1997, now U.S. Pat. No. 5,873,209 issued Feb. 23, 1999 which is a continuation of U.S. patent application Ser. No. 08/612,757 filed Mar. 8, 1996, now U.S. Pat. No. 5,661,943 issued Sep. 2, 1997.

### FIELD OF THE INVENTION

The invention relates to frames such as door or window frames, or other components such as porch posts, brickmolds, and casings, and particularly to components having integrally connected portions resistive to moisture, decay and insects.

### BACKGROUND OF THE INVENTION

The construction industry is under constant pressure to provide quality products at low cost. Door frames and other construction components are no exception.

During construction of a home or the like, an opening is left in the wall in which the door or window is installed. In some cases, a custom door frame is built in the door opening. After the door frame is built, the door is hung within the door frame. While this provides builders complete control, such a construction technique can be time consuming and costly. Measurements and construction must be very precise to accurately place the door frame into the opening and account for small variations in the door.

Another method of hanging frames is with the use of pre-hung doors or windows. In this case, a completed frame and door is provided to the builder. An example of an adjustable door frame assembly is found in U.S. Pat. No. 3,812,621. Thus, the frame and door are pre-matched for tighter fitting door or windows.

One known method of providing pre-built frames at a low cost is with the use of scrap lumber. Scrap lumber is produced when a defect, such as a knot hole or imperfect edge, is removed from a larger or parent piece of lumber. This allows the parent lumber to be sold as a higher quality piece than it otherwise would. The resulting scrap piece containing the defect is typically much smaller than its parent piece. The scrap lumber is then processed or recycled by removing the defect to produce a relatively small, but still good quality piece of wood fiber. These small pieces are then finger jointed at their ends and joined end to end to produce a single long piece, which is used to produce the door frame.

Norlander in U.S. Pat. No. 5,074,092 describes a technique for overcoming certain deficiencies with inexpensive lumber having a variety of knots and other defects. Quality veneers are assembled with cores of short end-to-end staves of solid lumber to produce a laminated wood door product having stability and good appearance.

While these techniques have produced low cost door and window frames, the use of wood in them causes the frames to be susceptible to moisture and insects. In the past, once water or termite damage has caused a portion of the frame to decay, that portion of the frame was replaced. Repair was performed while the frame was in place. A craftsman would cut out the decayed portion and replace it with another wood or plastic section. Thus, while costs were initially low, the end result was often expensive.

### SUMMARY OF THE INVENTION

The present invention is a component having durable, yet cost effective characteristics not found in the prior art. In the

**2**

preferred embodiment, a construction component is comprised of a first section and second section. The second section is comprised of a material that is durable and moisture, decay and insect resistant. The first section is comprised of wood. The wood and durable portions are connected end to end with a glued finger joint or other mechanical connection to assemble the component. Associated hardware may also be added.

### BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description of the preferred embodiment is considered in conjunction with the following drawings, in which:

FIG. 1 is an isometric view of a door frame system according to a preferred embodiment of the present invention; and

FIG. 2 is a side view of a side portion of the door frame of FIG. 1.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

Referring now to FIG. 1, there is illustrated a door frame F embodying the principles of the present invention. The door frame F is comprised of spaced vertical side jambs 1 and 2 connected together at the top by a horizontal top jamb 3. One side jamb 1 includes a suitable number of hinge recesses 4 formed in it to mount hinges on while the opposite side jamb 2 is used to mount a strike plate. Each of the jambs 1, 2 and 3 have an L-shaped shoulder 5 on an interior surface for capturing a door.

Each of the side jambs 1 and 2 are formed from an upper wood portion 6 and a lower durable portion 7. The wood portions 6 are formed from a number of smaller wood pieces 6a–6g. Side jamb 1 includes wood pieces 6a, 6b and 6c and side jamb 2 includes wood pieces 6d, 6e, 6f and 6g. The wood pieces 6a–6g are formed from what originally were pieces of scrap lumber which have been processed or recycled to remove imperfections, such as knots, bark or uneven surfaces. As shown, the wood pieces 6a–6g are not necessarily of even length and the side jambs 1 and 2 may comparatively include an unequal number or wood pieces. However, the number of pieces 6a–6g is not so many as to jeopardize overall strength of the frame F.

Top jamb 3 is formed from a number of smaller wood pieces 3a and 3b in a manner similar to wood portion 6.

The durable portion 7 may be an extruded wood-based product, such as Strandex®, ERT®, TREX® or the like, which can be shaped using conventional wood processing techniques, painted or stained. The durable portion may also be made of plastic, vinyl, metal, and combinations of any of these materials. The durable portion 7 has the characteristics of being moisture, decay and insect resistant. Side jamb 1 includes a durable piece 7a and side jamb 2 includes a durable piece 7b. The placement of the durable portion 7 on the lower portion of the frame prevents all but the most severe weather and insect damage suffered by prior art door frames. The durable pieces 7a and 7b may be proportioned based on the expected exposure to adverse conditions such as rain, snow or insects. Thus, the assembly of the wood portion 6 and the durable portion 7 provides a durable, yet cost effective door frame. It is noted that other materials, such as plastic or similar extrusions, can be used for the durable pieces to achieve the principles of the present invention.

5,950,391

**3**

In the assembly of the side jambs 1 and 2, the durable pieces 7 are preferably connected end to end by a glued finger joint 10 to the wood portions 6. One of the joints 10 is illustrated more clearly in FIG. 2. Referring now to FIG. 2, wood piece 6g includes a number of fingers 11 protruding from an end face and durable piece 7b has a corresponding number of mated fingers 12 protruding from an adjacent end face. It should be understood that other wood joints are contemplated, such as edge gluing or their equivalents.

Referring back to FIG. 1, it is there illustrated that the wood pieces comprising the wood portion 6 are also finger jointed so that the assembly of the wood portion 6 with the durable portion 7 forms a complete side jamb 1 or 2.

In the assembly of the door frame F, the top jamb 3 is connected to the side jambs 1 and 2 with a corner joint 13. After assembly of the door frame F, the door frame F is ready for placement into a door opening of a wall. Thereafter, hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door. In use, the moisture, decay and insect resistant features of the door frame F prevent the problems associated with the prior art door frames.

It is noted that the use of the present invention is not limited to door frames. The invention may be used in window frames, garage door frames, porch posts, casings, brickmolds and other applications where wood is heavily subjected to weather or insects, but a cost effective solution is desired. Further, it is noted that solid stock lumber can be used in place of pieces 6a–6g without detracting from the principles of the present invention. It is also noted that further weather and insect protection can be afforded by chemically treating the wood pieces, although at a somewhat higher cost.

**4**

In describing the invention, reference has been made to a preferred embodiment and illustrative advantages of the invention. However, those skilled in the art and familiar with the disclosure of the present invention may recognize additions, deletions, modifications, substitutions, equivalents and other changes may be made without departing from the spirit of the invention.

What is claimed is:

1. A frame, comprising:

a top jamb;

two side jambs having upper and lower portions that are integrally formed, said lower portion being a durable moisture, decay, and insect resistant material made from a second material.

2. A construction component comprising:

a first portion and a second portion that are integrally joined, said first portion being made of a first material, said second portion being a durable material made from a second material selected from the group consisting of materials other than wood, and materials other than wood in formulation with wood particles.

3. A window frame comprising:

a top frame jamb;

two side frame jambs;

said two side frame jambs each having upper and lower portions that are integrally formed, said upper portion being made of a first material, said lower portion being a durable material formulation comprised of plastic and cellulosic material.

\*   \*   \*   \*   \*

US006122882A

# United States Patent [19]

## Hagel

[11] Patent Number: 6,122,882

[45] Date of Patent: *Sep. 26, 2000

[54] **COMPONENT WITH INTEGRAL ENVIRONMENT RESISTANT MEMBERS**

[75] Inventor: **Richard C. Hagel**, Nacogdoches, Tex.

[73] Assignee: **Burns, Morris & Stewart, Limited Partnership**, Nacogdoches, Tex.

[ * ] Notice: This patent is subject to a terminal disclaimer.

[21] Appl. No.: **09/342,562**

[22] Filed: **Jun. 29, 1999**

### Related U.S. Application Data

[63] Continuation of application No. 09/130,160, Aug. 6, 1998, Pat. No. 5,950,391, which is a continuation of application No. 08/837,776, Apr. 22, 1997, Pat. No. 5,873,209, which is a continuation of application No. 08/612,757, Mar. 8, 1996, Pat. No. 5,661,943.

[51] Int. Cl.[7] .......................................... E04C 2/38
[52] U.S. Cl. .................... 52/656.4; 52/204.66; 52/204.7; 52/170; 52/515; 52/212
[58] Field of Search ............................. 52/656.4, 204.66, 52/204.7, 170, 212, 515, 656.5, 656.2, 656.7, 204.62, 726.1, 726.2, 726.3

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,812,621 | 5/1974 | Ragland | 49/505 |
| 5,074,092 | 12/1991 | Norlander | 52/455 |
| 5,649,397 | 7/1997 | Sauder | 52/211 |
| 5,661,943 | 9/1997 | Hagel | 52/656.4 |
| 5,775,041 | 7/1998 | Tull et al. | 62/455 |
| 5,873,209 | 2/1999 | Hagel | 52/656.4 |
| 5,950,391 | 9/1999 | Hagel | 52/656.4 |

*Primary Examiner*—Christopher T. Kent
*Assistant Examiner*—Jennifer I. Thissell
*Attorney, Agent, or Firm*—Standley & Gilcrest LLP

[57] **ABSTRACT**

A construction component for improved moisture, decay and insect resistance. The component preferably includes a plurality of members of which certain portions are comprised of materials resistant to moisture, decay and insects. The resistant member(s) are integrally connected to wood portion(s) to provide a single, low cost structure.

**5 Claims, 1 Drawing Sheet**





**U.S. Patent**          Sep. 26, 2000          **6,122,882**



*Fig. 1*

*Fig. 2*

6,122,882

**1**

## COMPONENT WITH INTEGRAL
## ENVIRONMENT RESISTANT MEMBERS

This application is a continuation of U.S. patent application Ser. No. 09/130,160, filed Aug. 6, 1998, now U.S. Pat. No. 5,950,391 issued Sep. 14, 1999, which is a continuation of Ser. No. 08/837,776 filed Apr. 22, 1997, now U.S. Pat. No. 5,873,209, which is a continuation of U.S. patent application Ser. No. 08/612,757 filed Mar. 8, 1996, now U.S. Pat. No. 5,661,943 issued Sep. 2, 1997.

### FIELD OF THE INVENTION

The invention relates to frames such as door or window frames, or other components such as porch posts, brickmolds, and casings, and particularly to components having integrally connected portions resistive to moisture, decay and insects.

### BACKGROUND OF THE INVENTION

The construction industry is under constant pressure to provide quality products at low cost. Door frames and other construction components are no exception.

During construction of a home or the like, an opening is left in the wall in which the door or window is installed. In some cases, a custom door frame is built in the door opening. After the door frame is built, the door is hung within the door frame. While this provides builders complete control, such a construction technique can be time consuming and costly. Measurements and construction must be very precise to accurately place the door frame into the opening and account for small variations in the door.

Another method of hanging frames is with the use of pre-hung doors or windows. In this case, a completed frame and door is provided to the builder. An example of an adjustable door frame assembly is found in U.S. Pat. No. 3,812,621. Thus, the frame and door are pre-matched for tighter fitting door or windows.

One known method of providing pre-built frames at a low cost is with the use of scrap lumber. Scrap lumber is produced when a defect, such as a knot hole or imperfect edge, is removed from a larger or parent piece of lumber. This allows the parent lumber to be sold as a higher quality piece than it otherwise would. The resulting scrap piece containing the defect is typically much smaller than its parent piece. The scrap lumber is then processed or recycled by removing the defect to produce a relatively small, but still good quality piece of wood fiber. These small pieces are then finger jointed at their ends and joined end to end to produce a single long piece, which is used to produce the door frame.

Norlander in U.S. Pat. No. 5,074,092 describes a technique for overcoming certain deficiencies with inexpensive lumber having a variety of knots and other defects. Quality veneers are assembled with cores of short end-to-end staves of solid lumber to produce a laminated wood door product having stability and good appearance.

While these techniques have produced low cost door and window frames, the use of wood in them causes the frames to be susceptible to moisture and insects. In the past, once water or termite damage has caused a portion of the frame to decay, that portion of the frame was replaced. Repair was performed while the frame was in place. A craftsman would cut out the decayed portion and replace it with another wood or plastic section. Thus, while costs were initially low, the end result was often expensive.

### SUMMARY OF THE INVENTION

The present invention is a component having durable, yet cost effective characteristics not found in the prior art. In the

**2**

preferred embodiment, a construction component is comprised of a first section and second section. The second section is comprised of a material that is durable and moisture, decay and insect resistant. The first section is comprised of wood. The wood and durable portions are connected end to end with a glued finger joint or other mechanical connection to assemble the component. Associated hardware may also be added.

### BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description of the preferred embodiment is considered in conjunction with the following drawings, in which:

FIG. 1 is an isometric view of a door frame system according to a preferred embodiment of the present invention; and

FIG. 2 is a side view of a side portion of the door frame of FIG. 1.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENT

Referring now to FIG. 1, there is illustrated a door frame F embodying the principles of the present invention. The door frame F is comprised of spaced vertical side jambs 1 and 2 connected together at the top by a horizontal top jamb 3. One side jamb 1 includes a suitable number of hinge recesses 4 formed in it to mount hinges on while the opposite side jamb 2 is used to mount a strike plate. Each of the jambs 1, 2 and 3 have an L-shaped shoulder 5 on an interior surface for capturing a door.

Each of the side jambs 1 and 2 are formed from an upper wood portion 6 and a lower durable portion 7. The wood portions 6 are formed from a number of smaller wood pieces 6a–6g. Side jamb 1 includes wood pieces 6a, 6b and 6c and side jamb 2 includes wood pieces 6d, 6e, 6f and 6g. The wood pieces 6a–6g are formed from what originally were pieces of scrap lumber which have been processed or recycled to remove imperfections, such as knots, bark or uneven surfaces. As shown, the wood pieces 6a–6g are not necessarily of even length and the side jambs 1 and 2 may comparatively include an unequal number or wood pieces. However, the number of pieces 6a–6g is not so many as to jeopardize overall strength of the frame F.

Top jamb 3 is formed from a number of smaller wood pieces 3a and 3b in a manner similar to wood portion 6.

The durable portion 7 may be an extruded wood-based product, such as Strandex®, ERT®, TREX® or the like, which can be shaped using conventional wood processing techniques, painted or stained. The durable portion may also be made of plastic, vinyl, metal, and combinations of any of these materials. The durable portion 7 has the characteristics of being moisture, decay and insect resistant. Side jamb 1 includes a durable piece 7a and side jamb 2 includes a durable piece 7b. The placement of the durable portion 7 on the lower portion of the frame prevents all but the most severe weather and insect damage suffered by prior art door frames. The durable pieces 7a and 7b may be proportioned based on the expected exposure to adverse conditions such as rain, snow or insects. Thus, the assembly of the wood portion 6 and the durable portion 7 provides a durable, yet cost effective door frame. It is noted that other materials, such as plastic or similar extrusions, can be used for the durable pieces to achieve the principles of the present invention.

6,122,882

3

In the assembly of the side jambs 1 and 2, the durable pieces 7 are preferably connected end to end by a glued finger joint 10 to the wood portions 6. One of the joints 10 is illustrated more clearly in FIG. 2. Referring now to FIG. 2, wood piece 6g includes a number of fingers 11 protruding from an end face and durable piece 7b has a corresponding number of mated fingers 12 protruding from an adjacent end face. It should be understood that other wood joints are contemplated, such as edge gluing or their equivalents.

Referring back to FIG. 1, it is there illustrated that the wood pieces comprising the wood portion 6 are also finger jointed so that the assembly of the wood portion 6 with the durable portion 7 forms a complete side jamb 1 or 2.

In the assembly of the door frame F, the top jamb 3 is connected to the side jambs 1 and 2 with a corner joint 13. After assembly of the door frame F, the door frame F is ready for placement into a door opening of a wall. Thereafter, hinges may be attached at recesses 4 to the door frame F and a strike plate added to mount and receive a door. In use, the moisture, decay and insect resistant features of the door frame F prevent the problems associated with the prior art door frames.

It is noted that the use of the present invention is not limited to door frames. The invention may be used in window frames, garage door frames, porch posts, casings, brickmolds and other applications where wood is heavily subjected to weather or insects, but a cost effective solution is desired. Further, it is noted that solid stock lumber can be used in place of pieces 6a–6g without detracting from the principles of the present invention. It is also noted that further weather and insect protection can be afforded by chemically treating the wood pieces, although at a somewhat higher cost.

4

In describing the invention, reference has been made to a preferred embodiment and illustrative advantages of the invention. However, those skilled in the art and familiar with the disclosure of the present invention may recognize additions, deletions, modifications, substitutions, equivalents and other changes may be made without departing from the spirit of the invention.

What is claimed is:

1. A construction component comprising:

a first portion and a second portion that are joined in an end-to-end relationship, said first portion being made of a first material, said second portion being a durable material different from said first material and being made from at least one plastic extruded in formulation with wood particles.

2. The construction component of claim 1, wherein said component is a frame member.

3. The construction component of claim 1, wherein said first material is wood.

4. The construction component of claim 1, wherein said first portion is above floor level and said second portion is at floor level.

5. A frame comprising:

a top frame jamb; and

two side frame jambs;

at least one of said two side frame jambs having a first portion comprised of a first material and a second portion made from a mixture comprising plastic and cellulosic material said first portion and said second portion joined in an end-to-end relationship.

* * * * *



# VISITOR CONFIDENTIAL DISCLOSURE AGREEMENT

This agreement sets forth the terms and conditions under which Burns, Morris, & Stewart, L.P. will disclose
**CONFIDENTIAL INFORMATION** to

_Klaus Meyer_ of _Stanley Works_ Co.,
hereinafter "Visitor".

Burns, Morris, & Stewart, L.P. will disclose **Confidential Information** to Visitor for the purpose of
presenting a business opportunity to Visitor.

**Visitor agrees**
* Not to disclose **Confidential Information** disclosed to Visitor by Burns, Morris, & Stewart, L.P. to
any third party and,
* To use the **Confidential Information** only for the purpose of evaluating the business opportunity.

**The obligations of non-disclosure and non-use do not apply**
* To information already available to the public at the time of disclosure and,
* To information already known to the Visitor as evidenced by the Visitor's written records prior to
receipt of the information from Burns, Morris, & Stewart, L.P.

The obligations not to disclose and not to use **Confidential Information** under this agreement shall
terminate **FIVE (5) YEARS** from the effective date of this agreement.

No right or license whatsoever, either expressed or implied, is granted to Visitor pursuant to this agreement
under any patent, patent application, provisional patent application, copyright, trademark, tradedress, trade
secret, or other proprietary right now or hereinafter.

If Visitor agrees to these terms and conditions of this agreement, please execute and date this agreement.

**ACCEPTED:**
**VISITOR:** _____

**DATE:** _____2-14-01_____

**ACCEPTED:**
**BURNS, MORRIS, & STEWART, L.P.:** _____

**DATE:** _____02/14/01_____

**EXHIBIT**

**E**



# VISITOR CONFIDENTIAL DISCLOSURE AGREEMENT

This agreement sets forth the terms and conditions under which Burns, Morris, & Stewart, L.P. will disclose
**CONFIDENTIAL INFORMATION** to

_Jeff Tartamella_ of _Stanley Works_ Co.,
hereinafter "Visitor".

Burns, Morris, & Stewart, L.P. will disclose **Confidential Information** to **Visitor** for the purpose of presenting a business opportunity to **Visitor**.

**Visitor agrees**
- Not to disclose **Confidential Information** disclosed to **Visitor** by Burns, Morris, & Stewart, L.P. to any third party and,
- To use the **Confidential Information** only for the purpose of evaluating the business opportunity.

The obligations of non-disclosure and non-use do not apply
- To information already available to the public at the time of disclosure and,
- To information already known to the **Visitor** as evidenced by the Visitor's written records prior to receipt of the information from Burns, Morris, & Stewart, L.P.

The obligations not to disclose and not to use **Confidential Information** under this agreement shall terminate **FIVE (5) YEARS** from the effective date of this agreement.

No right or license whatsoever, either expressed or implied, is granted to **Visitor** pursuant to this agreement under any patent, patent application, provisional patent application, copyright, trademark, tradedress, trade secret, or other proprietary right now or hereinafter.

If **Visitor** agrees to these terms and conditions of this agreement, please execute and date this agreement.

ACCEPTED:
VISITOR: _____

DATE: _____12/14/01_____

ACCEPTED:
BURNS, MORRIS, & STEWART, L.P.: _____

DATE: _____02/14/01_____

**EXHIBIT**

**F**



# VISITOR CONFIDENTIAL DISCLOSURE AGREEMENT

This agreement sets forth the terms and conditions under which Burns, Morris, & Stewart, L.P. will disclose
**CONFIDENTIAL INFORMATION** to

_____Rick Kon_____ of _____Stanley Door_____ Co.,
hereinafter **"Visitor"**.

Burns, Morris, & Stewart, L.P. will disclose **Confidential Information** to **Visitor** for the purpose of presenting a business opportunity to **Visitor**.

**Visitor agrees**
- Not to disclose **Confidential Information** disclosed to **Visitor** by Burns, Morris, & Stewart, L.P. to any third party and,
- To use the **Confidential Information** only for the purpose of evaluating the business opportunity.

The obligations of non-disclosure and non-use do not apply
- To information already available to the public at the time of disclosure and,
- To information already known to the **Visitor** as evidenced by the Visitor's written records prior to receipt of the information from Burns, Morris, & Stewart, L.P.

The obligations not to disclose and not to use **Confidential Information** under this agreement shall terminate **FIVE (5) YEARS** from the effective date of this agreement.

No right or license whatsoever, either expressed or implied, is granted to **Visitor** pursuant to this agreement under any patent, patent application, provisional patent application, copyright, trademark, tradedress, trade secret, or other proprietary right now or hereinafter.

If **Visitor** agrees to these terms and conditions of this agreement, please execute and date this agreement.

**ACCEPTED:**
**VISITOR:** _____R. Kon_____

**DATE:** _____2/14/01_____

**ACCEPTED:**
**BURNS, MORRIS, & STEWART, L.P.:** _____Jennifer Jones_____

**DATE:** _____02/14/01_____

**EXHIBIT**

G